# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| DANA MARIE CASSADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 5:17-CV-495 (MTT) |
| | ) |
| Commissioner GREGORY DOZIER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

After screening the Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, United States Magistrate Judge Charles H. Weigle recommends denying the Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) and dismissing the Plaintiff's complaint without prejudice because (1) the Plaintiff has already had three or more actions dismissed on the grounds that they were frivolous, malicious, or failed to state a claim and accordingly the Prison Litigation Reform Act's "three strikes" provision applies to the Plaintiff's complaint; and (2) the Plaintiff's complaint does not allege "imminent danger" sufficient to trigger the imminent danger exception to the "three strikes" provision. Doc. 5. The Plaintiff has objected to the Recommendation, arguing that she has sufficiently alleged that she faces "imminent danger." Doc. 6.

Pursuant to 28 U.S.C. 636(b)(1), the Court has considered the objections and made a de novo determination of the portions to which the Plaintiff objects. As discussed below, the Court **REJECTS** the Recommendation (Doc. 5); finds that the Plaintiff has alleged "imminent danger of serious physical injury" and grounded her

allegations in specific facts sufficient to avoid the "three strikes" provision of the Prison Litigation Reform Act; **GRANTS** the Plaintiff's motion to proceed *in forma pauperis;* finds that the Plaintiff states a claim sufficient to survive screening pursuant to the PLRA as to most of the Defendants; and accordingly **ORDERS that service now be made on Defendants Angelyn Curry, Gregory Dozier, Sharon Lewis, Tom McElhaney, Michael Pitts, and Cedric Taylor**, but the Plaintiff's claims against **Shawn Emmons are DISMISSED without prejudice**.

## I. FACTS[1]

The Plaintiff is a 49-year-old preoperative transgender woman. Doc. 6 at 3. The Plaintiff has been taking "feminizing hormone therapy and chemical castration treatments continually since January 2016" to address her gender dysphoria. Doc. 1-1 ¶ 4. She seeks injunctive relief based upon Defendants' failure to provide her with medical necessary surgery in violation of the Eighth Amendment of the United States Constitution. *Id.* ¶ 1.

The Plaintiff claims that on November 3, 2015, she was sent to Augusta State Medical Prison to treat her gender dysphoria. *Id.* ¶ 66. There, she was prescribed hormone therapy and chemical castration treatments, as well as 90-day follow-up appointments. *Id.* The Plaintiff claims that the hormone therapy she currently undergoes, which is acknowledged as medically necessary by the state, presents serious health risks in light of her medical conditions and the intensification of gender dysphoria with age. *Id.* ¶¶ 38-40, 43, 45. She also alleges that the hormone therapy is not sufficient to address her gender dysphoria, including her greater risk of suicide,

---

[1] All facts are alleged by the Plaintiff's Complaint and accepted as true for purposes of PLRA screening.

evidenced by previous suicide attempts and self-mutilation, and that her depression, hypertension, and "cardioreactivity" are all exacerbated by the stigma of her "gender and anatomical incongruence." *Id.* ¶¶ 41, 44-45, 67. The Plaintiff further alleges that one mental health care provider, Dr. McKinnon, "unequivocally prescribed [gender reassignment surgery] as medically necessary for" her, and another, Dr. Duane Harris, stated in 2015 in the Plaintiff's mental health progress record that the Plaintiff is "a good candidate for gender confirming surgery." *Id.* ¶¶ 49, 64.

The Plaintiff alleges that she "has made numerous formal and informal requests for [gender reassignment surgery] since she started on hormones in January 2016." *Id.* ¶ 63. The Plaintiff's claims arise from the Defendants' denials of those requests. The Plaintiff alleges that the Defendants have been deliberately indifferent to her medical needs by refusing to provide her with gender reassignment surgery despite their knowledge of her "on-going pain and anguish" and her "long history of self-injurious behavior as related to her failure to obtain [gender reassignment surgery]." *Id.* ¶¶ 114, 116. The Plaintiff requests injunctive relief and attorney's fees but not monetary damages. *See id.* ¶¶ 134-39.

## II. IMMINENT DANGER OF SERIOUS PHYSICAL INJURY

As the Recommendation notes, the Plaintiff has filed multiple lawsuits in federal court, and at least three of her complaints or appeals have been dismissed on a ground that constitutes a "strike" under the Prison Litigation Reform Act. Doc. 5 at 2. Pursuant to the PLRA's "three strikes provision," the Plaintiff can therefore only go forward with her claim *in forma pauperis* if she alleges an "imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999).

To satisfy the "imminent danger" exception, a plaintiff must allege the existence of a present and imminent danger of serious physical injury. *Id.* General allegations that are not grounded in specific facts are not sufficient. *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004).

The Recommendation concludes that the Plaintiff's complaint "does not . . . set forth any specific facts identifying an imminent danger of serious physical injury as a result of the denial of surgery." Doc. 5 at 3. But, liberally construed, the Plaintiff's complaint does allege that surgery is "essential" because her hormone therapy, which she undertakes instead of gender reassignment surgery, is inadequate in the following ways: (1) it exposes the Plaintiff to heightened health risks due to interactions with her "chronic obstructed pulmonary disease, asthma, and hypertension;" (2) it will become increasingly inadequate to deal with gender dysphoria, which the Plaintiff alleges intensifies with age and is "more pronounced today than ever before" due to her age and circumstances; (3) as a result, the Plaintiff's mental health needs are not being addressed, and her "inability to reduce or modulate [her] internal anguish is likely to result in emotional decomposition and further self-harm." Doc. 1-1 ¶¶ 38-40, 43-44. The Plaintiff alleges a history of self-harm arising from her gender dysphoria. *See, e.g.*, *id.* ¶¶ 67, 113. She also alleges that her treating psychiatrist has "unequivocally prescribed [gender reassignment surgery] as medically necessary for Plaintiff." *Id.* ¶ 49. For purposes of determining whether the "three strikes" provision applies, the Court accepts the Plaintiff's allegations and finds them "grounded in specific facts" sufficient to satisfy the imminent danger exception, and the Court accordingly **REJECTS** the Recommendation. Accordingly, the Court must review the Plaintiff's Complaint and

determine whether the Plaintiff's claims should be dismissed or proceed for factual development. *See* 28 U.S.C. § 1915A.

### III. MOTION TO PROCEED IN FORMA PAUPERIS

The Plaintiff seeks leave to proceed in this action without paying the Court's filing fee. Doc. 2. The PLRA authorizes courts to commence lawsuits without prepayment of fees if the plaintiff submits an affidavit in support of her claim of indigence and submits a certified copy of her trust fund account statement for the 6-month period immediately preceding the filing of the complaint. 28 U.S.C. §§ 1915(a)(1)-(2). The Plaintiff has done so, and the Court finds that the Plaintiff is unable to pay her filing fee. Docs. 2; 2-1. Accordingly, the Plaintiff's motion to proceed *in forma pauperis* (Doc. 2) is **GRANTED**. This does not mean that the filing fee is waived; federal law requires that Plaintiff still pay the full filing fee over time, using the payment plan described in 28 U.S.C. § 1915(b) and directed below. The **CLERK** is therefore **ORDERED** to forward a copy of this order to the business manager of the facility in which Plaintiff is confined so that withdrawals from her account may commence as payment to the Court's filing fee.

### IV. PRELIMINARY SCREENING

**A.	Standard on Screening**

The PLRA also requires the Court screen the Plaintiff's Complaint and dismiss the Complaint if the Court determines that it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. §§ 1915A(b)(1)-(2). But, when screening a complaint under the PLRA, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir.

2006); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  Pro se pleadings are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X*, 437 F.3d at 1110 (internal quotation marks omitted).

A complaint fails to state a claim on which relief may be granted if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action."  *Twombly*, 550 U.S. at 555.  In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.  *Id.* at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

**B.     Requirements for a Deliberate Indifference to Medical Needs § 1983 Claim**

A claimant is entitled to relief under 42 U.S.C. § 1983 if he or she can prove that a person acting under color of state law deprived him or her of a federal right.  *Almand v. DeKalb Cty.,* 103 F.3d 1510, 1513 (11th Cir.1997).  Under the Eighth Amendment, state actors are prohibited from inflicting cruel and unusual punishment, such as punishments that are "totally without penological justification."  *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981) (internal quotation marks omitted).  Courts examine whether prison officials "acted with deliberate indifference to the inmates' health or safety." *Hope v. Pelzer,* 536 U.S. 730, 737-38 (2002) (internal quotation marks omitted). Generally, supervisors are not liable under § 1983 for the constitutional violations of

their subordinates. *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004). But supervisors are liable if either (1) they personally participate in the alleged constitutional violation, or (2) a causal connection exists between their actions and the alleged constitutional deprivation. *Id.*

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017) (quoting *Brown*, 387 F.3d at 1351); *see also Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (holding that a deliberate indifference to a prisoner's medical needs violates the Eighth Amendment). The plaintiff must prove that she had an objectively serious medical need, and that the prison official acted with deliberate indifference to that need. *Id.* (quoting *Brown*, 387 F.3d at 1351).

**C.     Assessing the Plaintiff's Complaint**

The Court must determine whether the Plaintiff's Complaint states a claim upon which relief may be granted that (1) she has an objectively serious medical need, and (2) the Defendants acted with deliberate indifference to that need.

**1. Serious Medical Need**

On screening, the Court cannot find that the Plaintiff has failed to state a claim that her gender dysphoria is an objectively serious medical need. A "serious medical need" is a condition that either (1) has been diagnosed by a physician as requiring treatment, or (2) is so obvious that a lay person would easily recognize the need for medical attention. *Mitchell*, 873 F.3d at 876 (citation omitted). Accepting all factual allegations as true and liberally construing the Plaintiff's Complaint, the Plaintiff's Complaint has met this requirement. *See generally* Doc. 1-1 (documenting the

their subordinates. *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004). But supervisors are liable if either (1) they personally participate in the alleged constitutional violation, or (2) a causal connection exists between their actions and the alleged constitutional deprivation. *Id.*

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017) (quoting *Brown*, 387 F.3d at 1351); *see also Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (holding that a deliberate indifference to a prisoner's medical needs violates the Eighth Amendment). The plaintiff must prove that she had an objectively serious medical need, and that the prison official acted with deliberate indifference to that need. *Id.* (quoting *Brown*, 387 F.3d at 1351).

**C.     Assessing the Plaintiff's Complaint**

The Court must determine whether the Plaintiff's Complaint states a claim upon which relief may be granted that (1) she has an objectively serious medical need, and (2) the Defendants acted with deliberate indifference to that need.

**1. Serious Medical Need**

On screening, the Court cannot find that the Plaintiff has failed to state a claim that her gender dysphoria is an objectively serious medical need. A "serious medical need" is a condition that either (1) has been diagnosed by a physician as requiring treatment, or (2) is so obvious that a lay person would easily recognize the need for medical attention. *Mitchell*, 873 F.3d at 876 (citation omitted). Accepting all factual allegations as true and liberally construing the Plaintiff's Complaint, the Plaintiff's Complaint has met this requirement. *See generally* Doc. 1-1 (documenting the

their subordinates. *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004). But supervisors are liable if either (1) they personally participate in the alleged constitutional violation, or (2) a causal connection exists between their actions and the alleged constitutional deprivation. *Id.*

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017) (quoting *Brown*, 387 F.3d at 1351); *see also Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (holding that a deliberate indifference to a prisoner's medical needs violates the Eighth Amendment). The plaintiff must prove that she had an objectively serious medical need, and that the prison official acted with deliberate indifference to that need. *Id.* (quoting *Brown*, 387 F.3d at 1351).

**C.     Assessing the Plaintiff's Complaint**

The Court must determine whether the Plaintiff's Complaint states a claim upon which relief may be granted that (1) she has an objectively serious medical need, and (2) the Defendants acted with deliberate indifference to that need.

**1. Serious Medical Need**

On screening, the Court cannot find that the Plaintiff has failed to state a claim that her gender dysphoria is an objectively serious medical need. A "serious medical need" is a condition that either (1) has been diagnosed by a physician as requiring treatment, or (2) is so obvious that a lay person would easily recognize the need for medical attention. *Mitchell*, 873 F.3d at 876 (citation omitted). Accepting all factual allegations as true and liberally construing the Plaintiff's Complaint, the Plaintiff's Complaint has met this requirement. *See generally* Doc. 1-1 (documenting the

Plaintiff's mental and physical health issues arising from her gender dysphoria, as well as her diagnoses from health care professionals); *Boxer X*, 437 F.3d at 1110 (outlining district courts' standard for considering pro se complaints).

**2. Deliberate Indifference**

Accordingly, the Court next examines whether the Plaintiff's claims should be dismissed on screening for failure to state a claim that any Defendants acted with deliberate indifference to the serious medical need. A prison official acts with deliberate indifference to an inmate's serious medical need when (1) he has subjective knowledge of a risk of serious harm; (2) he disregards that risk; and (3) he disregards the risk "by conduct that is more than mere negligence." *Mitchell*, 873 F.3d at 876 (citation omitted). The Plaintiff alleges that the following Defendants were deliberately indifferent to her medical needs in violation of the Eighth Amendment: Angelyn Curry, Gregory Dozier, Shawn Emmons, Sharon Lewis, Tom McElhaney, Michael Pitts, Cedric Taylor, and "Does 1-30." Doc. 1 at 1. The Plaintiff alleges that the Defendants "fail[ed] to intercede and grant Plaintiff['s] medically necessary [gender reassignment surgery] and . . . fail[ed] to ensure that [the Georgia Department of Corrections (GDOC)]'s policies surrounding the provision for medical treatment are implemented in a fair and non-discriminatory manner and/or that inmates receive medically necessary treatment for gender dysphoria, including [gender reassignment surgery] in appropriate cases." Doc. 1-1 ¶ 124. The Court discusses the Plaintiff's claims against each of the seven named Defendants, in turn.

The Plaintiff alleges that Defendant Curry "is currently employed by the GDOC Inmate Affairs and Ombudsman Unit in Forsyth, Georgia." *Id.* ¶ 9. The Plaintiff alleges

that Curry (1) evaluated the Plaintiff's grievance appeal, which denied her request for gender reassignment surgery, as Defendant Dozier's "appointed proxy;" (2) received a letter from the Plaintiff, in addition to the appeal, "outlining her reasons why [gender reassignment surgery] is necessary treatment for her gender dysphoria;" but nevertheless (3) recommended the Plaintiff's appeal be referred to Defendant Lewis despite Lewis's lack of "significant experience or training in the treatment of transsexual patient[s]" and lack of qualifications "to make a determination with regards to the medical necessity of [gender reassignment surgery]." *Id.* ¶¶ 97-98, 104, 107. According to the Plaintiff, this constitutes deliberate indifference to her medical needs. *Id.* ¶ 128.

The Plaintiff alleges that Defendant Dozier is Commissioner of GDOC and in that role "has ultimate responsibility and authority for the overall management administration and operation of the GDOC, and [is] charged with evaluated grievance appeals with the authority to grant or deny the relief requested in the appeals." *Id.* ¶ 5. The Plaintiff further alleges that Dozier evaluated her grievance appeal "through [Dozier's] appointed proxy, Defendant Curry," denied the grievance without considering the medical opinions of the Plaintiff's mental health care providers; "over-rode [sic] the recommendations by deliberately seeking out a contrary opinion" from a psychiatrist without experience in treating gender dysphoria; and denied the Plaintiff's medically necessary surgery with "unreasonable and wanton disregard for appropriate treatment," despite having "ultimate authority" for determining whether the Plaintiff should receive surgery. *Id.* ¶¶ 97, 118-24. In sum, the Plaintiff alleges that Dozier was "deliberately indifferent to Plaintiff's medical need for [gender reassignment surgery]" by failing "to take any

reasonable measures to address the ongoing mental anguish that Plaintiff suffers as a result of her gender dysphoria, which is not fully addressed by the feminizing hormone therapy and chemical castration treatments that Plaintiff has been receiving for the past 25 months." *Id*. ¶ 122.

The Plaintiff alleges that Defendant Emmons served as the Warden of Johnson State Prison, "at which facility Plaintiff was housed during the infancy of the issues contained herein," and in this capacity was responsible for reviewing and deciding prisoners' grievances. *Id*. ¶ 8. The Plaintiff further alleges that she filed a grievance with Emmons, seeking gender reassignment surgery, and that Emmons denied the request on August 16, 2016 despite being "fully aware that Plaintiff faces a serious medical need for [gender reassignment surgery]." *Id*. ¶¶ 86, 89-92, 94-97. But, according to the Plaintiff's Complaint, she was transferred to Baldwin State Prison on September 23, 2016. *Id*. ¶ 102. When a prisoner is transferred from a prison, the prisoner's claims for prospective remedies as to the allegedly wrongful conduct in that prison become moot. *See Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a [§] 1983 action fails to present a case or controversy once the inmate has been transferred." (citation omitted)); *Davila v. Marshall*, 649 F. App'x 977 979-80 (11th Cir. 2016) ("[A] prisoner's request for injunctive relief relating to the conditions of his confinement becomes moot when he is transferred." (citing *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988)). The Plaintiff therefore fails to state a claim upon which relief may be granted against Emmons, because according to the Complaint Emmons is the warden of Johnson State Prison and not Baldwin State Prison, where the Plaintiff is

confined.  Accordingly, the Plaintiff's claims against Emmons are **DISMISSED without prejudice**.

The Plaintiff alleges that Defendant Lewis served as GDOC's State Medical Director, "with responsibility for ensuring the administration of health care and the execution of policies governing medical care for all GDOC facilities as well as evaluating grievance appeals of prisoners referred by Inmate Affairs, with absolute authority to grant or deny the relief requested in the appeals."  Doc. 1-1 ¶ 11.  The Plaintiff further alleges that her grievance appeal was referred to Lewis on Defendant Curry's recommendation and that Lewis denied her appeal, failing to consider or address the opinion of the Plaintiff's mental health care providers that gender reassignment surgery was necessary.  *Id.* ¶¶ 104, 113, 118, 120, 124.  Matching her allegations against Defendant Dozier, the Plaintiff alleges that Lewis was "deliberately indifferent to Plaintiff's medical need for [gender reassignment surgery]" by failing "to take any reasonable measures to address the ongoing mental anguish that Plaintiff suffers as a result of her gender dysphoria, which is not fully addressed by the feminizing hormone therapy and chemical castration treatments that Plaintiff has been receiving for the past 25 months."  *Id.* ¶ 122.

The Plaintiff alleges that Defendant McElhenney served as Deputy Director of Medical Services for GDOC, and in that capacity was responsible for ensuring the operation of medical care in GDOC facilities and, like the preceding Defendants, was entrusted with the authority to evaluate relevant grievance appeals.  *Id.* ¶ 10.[2]  The

---

[2] The caption of the Plaintiff's Complaint spells McElhenney's name "McElhaney."  Doc. 1 at 1.  But the Complaint alleges the name "McElhenney."  *See, e.g.*, Doc. 1-1 ¶ 10.  Accordingly, the Clerk of Court is **DIRECTED** to **CHANGE "Tom McElhaney"** to **"Tom McElhenney."**

Plaintiff further alleges that McElhenney denied her formal request for gender reassignment surgery, despite being informed by the Plaintiff's mental health care provider that such surgery was necessary, and that McElhenney "entirely ignored and thereby denied Plaintiff's formal request for surgery" without reviewing the Plaintiff's medical and mental health records or personally interviewing the Plaintiff or her treating mental health care providers. *Id.* ¶¶ 74-75, 80-82. The Plaintiff argues that McElhenney's denial shows a "blanket custom and/or axiom of prohibiting [gender reassignment surgery] for transgender individuals, in direct disregard for universally accepted standards of medically necessary treatment," and that McElhenney "failed to take any reasonable measures to address the ongoing mental anguish that Plaintiff suffers as a result of her gender dysphoria." *Id.* ¶¶ 83-86.

The Plaintiff alleges that Defendant Pitts served as Psychologist and Clinical Director at Baldwin State Prison. *Id.* ¶ 7. The Plaintiff further alleges that Pitts failed to respond to the Plaintiff's three written correspondences in which she shared her medical needs arising from gender dysphoria, failed to discuss the Plaintiff's case with Defendant Lewis as he promised, failed to take steps to ensure the other Defendants had knowledge of the Plaintiff's ongoing symptoms of gender dysphoria, and "simply chose to ignore Plaintiff[']s serious need for [gender reassignment surgery] and her obvious high risk of suicide," despite knowledge of the Plaintiff's "significant signs of distress and anxiety" and her stated suicidal thoughts. *Id.* ¶¶ 103, 105, 110-11, 114-17.

Finally, the Plaintiff alleges that Defendant Taylor served as Warden of Baldwin State Prison, and in that capacity was responsible for the operation of the prison and the welfare of its inmates. *Id.* ¶ 6. The Plaintiff further alleges that, despite her written

Plaintiff further alleges that McElhenney denied her formal request for gender reassignment surgery, despite being informed by the Plaintiff's mental health care provider that such surgery was necessary, and that McElhenney "entirely ignored and thereby denied Plaintiff's formal request for surgery" without reviewing the Plaintiff's medical and mental health records or personally interviewing the Plaintiff or her treating mental health care providers. *Id.* ¶¶ 74-75, 80-82. The Plaintiff argues that McElhenney's denial shows a "blanket custom and/or axiom of prohibiting [gender reassignment surgery] for transgender individuals, in direct disregard for universally accepted standards of medically necessary treatment," and that McElhenney "failed to take any reasonable measures to address the ongoing mental anguish that Plaintiff suffers as a result of her gender dysphoria." *Id.* ¶¶ 83-86.

The Plaintiff alleges that Defendant Pitts served as Psychologist and Clinical Director at Baldwin State Prison. *Id.* ¶ 7. The Plaintiff further alleges that Pitts failed to respond to the Plaintiff's three written correspondences in which she shared her medical needs arising from gender dysphoria, failed to discuss the Plaintiff's case with Defendant Lewis as he promised, failed to take steps to ensure the other Defendants had knowledge of the Plaintiff's ongoing symptoms of gender dysphoria, and "simply chose to ignore Plaintiff[']s serious need for [gender reassignment surgery] and her obvious high risk of suicide," despite knowledge of the Plaintiff's "significant signs of distress and anxiety" and her stated suicidal thoughts. *Id.* ¶¶ 103, 105, 110-11, 114-17.

Finally, the Plaintiff alleges that Defendant Taylor served as Warden of Baldwin State Prison, and in that capacity was responsible for the operation of the prison and the welfare of its inmates. *Id.* ¶ 6. The Plaintiff further alleges that, despite her written

correspondence and conversations in which she explained her suicidal thoughts to Taylor, Taylor told her that there was nothing more he could do for her, failed to take steps to ensure the other Defendants had knowledge of the Plaintiff's ongoing symptoms of gender dysphoria, and failed to take steps to ensure her safety. *Id.* ¶¶ 108-09, 112, 114-17, 125.

In sum, liberally construed, the Plaintiff's Complaint alleges that each Defendant (1) had subjective knowledge of the Plaintiff's risk of serious harm from her gender dysphoria; (2) disregarded that risk by denying gender reassignment surgery; and (3) did so "by conduct that [wa]s more than mere negligence." *Mitchell*, 873 F.3d at 876 (citation omitted). Accordingly, the Plaintiff has met her pleading burden, and her Complaint should survive screening pursuant to the PLRA as to her claims against all Defendants except for Emmons, as discussed above. *See id.* (reversing a district court's dismissal of a complaint that alleged prison officials knew of the plaintiff's hepatitis C diagnosis and cirrhosis but failed to provide him with treatment); *see also Woods v. Miller*, 215 F. App'x 796, 798 (11th Cir. 2007) (reversing district court's dismissal of a complaint on screening when the complaint alleged that the defendants gave the plaintiff grossly inadequate care for his back condition).

**D.    Service**

Because the Court finds that the Plaintiff's claims against six of the Defendants should survive screening pursuant to the PLRA, it is hereby **ORDERED that service now be made on Defendants Angelyn Curry, Gregory Dozier, Sharon Lewis, Tom McElhanney, Michael Pitts, and Cedric Taylor** and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison

Litigation Reform Act. Those Defendants are also reminded of the duty to avoid unnecessary service expenses and the possible imposition of expenses for failure to waive service. However, the Plaintiff's claims against **Shawn Emmons are DISMISSED without prejudice**.

## V. INSTRUCTIONS TO THE PARTIES

The parties are hereby noticed that they have certain obligations to the Court, as discussed below.

### A. Duty to Advise of Address Change

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

### B. Duty to Prosecute Action

The Plaintiff must diligently prosecute her Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. The Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### C. Filing and Service of Motions, Pleadings, and Correspondence

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by

mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

**D.      Discovery**

The Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought. The Defendants shall not commence discovery until an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with her custodian. The Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of her lawsuit under Federal Rule of Civil Procedure 37.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by the Defendants and granted by the Court. This 90-day

period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel or party. The Court incorporates those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court, INTERROGATORIES may not exceed 25 to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed 10 requests for each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed 15 requests to each party. No party is required to respond to any request which exceeds these limitations.

**E.     Requests for Dismissal and/or Judgment**

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief or memorandum of law citing supporting authorities. These dispositive motions should be filed at the earliest time possible, but no later than 120 days from the beginning of the discovery period.

**F.     Directions to Custodian of Plaintiff**

Following the payment of the required filing fee or waiving of the same, the Warden of the institution wherein the Plaintiff is incarcerated, or the Sheriff of any

county wherein she is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court 20% of the preceding month's income credited to the Plaintiff's account at said institution until the filing fee has been paid in full. 28 U.S.C. §§ 1915(b)(1)-(2). In accordance with the PLRA, the Plaintiff's custodian is **AUTHORIZED** to forward payments from the Plaintiff's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. *Id.* It is also **ORDERED** that the collection of monthly payments from the Plaintiff's trust account continue until the entire $350.00 has been collected, notwithstanding the dismissal of the Plaintiff's lawsuit or the granting of judgment against her prior to the collection of the full filing fee.

### G. Plaintiff's Obligation to Pay Filing Fee

Pursuant to the PLRA, in the event the Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, she shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full. *See* 28 U.S.C. § 1915(b)(1) ("[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee."). The Plaintiff shall continue to remit monthly payments as required by the PLRA. Collection from the Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event the Plaintiff is released from custody and fails to remit payments. In addition, the Plaintiff is on notice that her complaint is subject to dismissal if she has the ability to make monthly payments and fails to do so.

## VI. CONCLUSION

As discussed above, the Recommendation (Doc. 5) is **REJECTED**; the Plaintiff's motion to proceed *in forma pauperis* (Doc. 2) is **GRANTED**; the **CLERK** is **ORDERED** to forward a copy of this order to the business manager of the facility in which the Plaintiff is confined and **DIRECTED** to remove Defendant "Tom McElhaney" and add Defendant "Tom McElhenney;" **SERVICE is ordered on Defendants Angelyn Curry, Gregory Dozier, Sharon Lewis, Tom McElhanney, Michael Pitts, and Cedric Taylor**; the Plaintiff's claims against **Shawn Emmons are DISMISSED without prejudice**; and **DISCOVERY is ordered** to be complete within 90 days of the filing of an answer or dispositive motion by the Defendants (whichever comes first).

**SO ORDERED**, this 16th day of March, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
